IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| PATRICIA CHATMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-077 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

_____

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
_____

Patricia Chatman ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.     BACKGROUND**

At the time of the hearing, Plaintiff was a fifty-five year-old female who completed the eleventh grade in special education and has worked as a housekeeper, child care monitor,

and companion[1]. R. at 17, 18. Plaintiff protectively applied for SSI and DIB on November 29, 2010, alleging a disability onset date of April 1, 2010. Tr. ("R."), pp.161-67, 192-97. The Social Security Administration denied Plaintiff's applications initially, R. at 54, 66, and on reconsideration, R. at 80, 92. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 116, and the ALJ held a hearing on December 13, 2012, R. at 23-43. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by counsel, and Mark Leaptrot, a Vocational Expert ("VE"). Id. On January 18, 2013, the ALJ issued an unfavorable decision. R. at 12-18.

Applying the five-step sequential process required by 20 C.F.R. § 404.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since April 1, 2010, the alleged onset date (20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

2. The claimant has the following severe impairments: learning disability, and borderline intellectual functioning (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functioning capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to performing repetitive, short cycle and low

---

[1] According to the Dictionary of Occupational Titles, a companion cares for elderly, handicapped, or convalescent persons. Dep't of Labor, *Dictionary of Occupational Titles* § 309.677-010 (companion).

>   end detailed work (20 C.F.R. §§ 404.1565 and 416.965). The claimant
>   is capable of performing past relevant work as a motel housekeeper,
>   child care monitor, and companion. This work does not require the
>   performance of work-related activities precluded by the claimants
>   residual functional capacity. (Id.)

R. at 10-18.

When the Appeals Council denied Plaintiff's request for review, R. at 5-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal of the adverse decision.

Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ improperly discredited her IQ score and found that she did not have sufficient deficits in adaptive functioning. (See generally doc. no. 10 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 11 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial

3

evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

**III. DISCUSSION**

### A. The ALJ's Finding That Plaintiff Did Not Meet Listing 12.05B or 12.05C Is Supported by Substantial Evidence

Plaintiff argues the ALJ's determination that Plaintiff did not meet Listing 12.05B and 12.05C is not supported by substantial evidence because Plaintiff has a qualifying IQ score and deficits in adaptive functioning. (See doc. no. 10 (hereinafter "Pl.'s Br."), p. 9.)

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any substantial gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; an impairment that manifests only some of those criteria, no matter how severely, does not qualify. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment

before age 22."[2] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. A claimant generally meets the Listing 12.05(C) criteria when he, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). Thus, to meet Listing 12.05C, there must be a showing of (1) deficits in adaptive functioning; (2) a qualifying IQ score; (3) onset before age 22; and (4) the requisite deficits in work-related functioning. See Perkins., 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir.2001)). In contrast, for a claim to meet Listing 12.05B, there must be only a showing of (1) deficits in adaptive

---

[2]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

functioning; (2) a qualifying IQ score; and (3) onset before age 22. See Perkins., 553 F. App'x at 873 (citing 20 C.F.R. pt. 404, subpt. P, app. 1, 12.05 and Hodges v. Barnhart, 276 F.3d 1265, 1268–69 (11th Cir.2001)).

The ALJ's determination that Plaintiff did not meet Listing 12.05B and 12.05C due to her lack of deficits in adaptive functioning is supported by substantial evidence. In making this finding the ALJ stated:

> In an April 26, 2011 consultative examination report, Dr. Whitley, reported that the claimant attained a full scale IQ of 55; however, these results are not even close to her true abilities when considering her adaptive functioning, as she was able to raise six children on her own, had her own child care business taking care of up to 7 children at one time, has a driver's license, and has been able to handle money, and pay taxes.

The ALJ also went on to note that the consultative examiner diagnosed borderline intellectual functioning rather than intellectual disability and that Plaintiff shops, does laundry, and has lived by herself. R. at 17. The ALJ also noted that Plaintiff is still currently working eighteen hours per week taking care of the elderly, below the level of substantial gainful activity. R. at 17.

First, any argument by Plaintiff that the ALJ improperly disregarded Plaintiff's IQ score fails because the ALJ fully credited her IQ score of 55. R. at 15. The ALJ simply found that Plaintiff did not meet the adaptive functioning requirement in order to qualify under the listing for intellectual disability, a separate inquiry from whether the IQ score is valid. See R. at 15; Harris v. Comm'r of Soc. Sec., 330 F. App'x 813, 815 (11th Cir. 2009). As the Eleventh Circuit has held, "[a] valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior." Perkins, 553 F. at 873.

7

Further, the ALJ's finding is consistent with precedent affirming ALJ opinions that relied on daily activities and work history in finding that a claimant did not meet the deficits in adaptive functioning requirement. See Perkins., 553 F. App'x at 873 (affirming ALJ's conclusion that plaintiff did not meet Listing 12.05C despite IQ in the required range due to work experience and daily living activities); Garrett v. Astrue, 244 F.App'x 937, 939 (11th Cir. 2007) (finding no deficits in adaptive functioning where claimant was "able to cook simple meals; perform chores such as dishwashing and yard work; and build model cars," had daily activities that included "church attendance, television viewing, card playing, and walking in the mall," and testified that "with orientation and instruction, he believed he could return to [unskilled work].").

Plaintiff primarily takes issue with how the ALJ addressed the evidence that Plaintiff was able to raise six children, operate her own childcare business, obtain a driver's license, handle money, and pay taxes. (Doc. no. 10, pp. 12-13.) Much of Plaintiff's argument goes to how the ALJ weighed the evidence, a task beyond this Court's purview. Cornelius, 936 F.2d at 1145. This Court's sole task is to determine whether substantial evidence supports the ALJ's conclusion that Plaintiff did not have the requisite deficits in adaptive functioning to meet Listing 12.05B or 12.05C. The evidence cited by the ALJ, considered as a whole, is sufficient to overcome the presumption that Plaintiff has deficits in adaptive functioning. First, evidence that Plaintiff raised six kids and continued to perform similar tasks in taking care of her grandchildren along with other children is probative of adaptive functioning and shows an ability to not only take care of her own individual demands, but also the demands

of others. Further, the tasks involved in such activity, such as making meals and changing diapers, are similar to other household chores used to rebut the Hodges presumption in other Eleventh Circuit cases. See Garrett, 244 F.App'x at 939; O'Neal v. Comm'r of Soc. Sec., 614 F. App'x 456, 460 (11th Cir. 2015) (citing evidence that plaintiff looked after his two children and performed activities of daily living independently).

Plaintiff also argues that evidence she has a driver's license is not relevant to the ALJ's analysis because she had assistance in passing the license examination. R. at 309. Even discrediting any ability by Plaintiff to pass a driver's license examination, the fact that she regularly used her license in driving to the grocery store supports the ALJ's decision. R. at 29. Likewise, Plaintiff's ability to handle money and pay taxes shows an ability to live independently. The most pertinent evidence to the ALJ's decision is that Plaintiff worked as a babysitter and still works a job taking care of the elderly. R. at 17. Regardless of the vocational level of Plaintiff's past work history, both of these jobs are relevant to the "personal independence expected of someone in their particular age group, sociological background, and community setting" and show that Plaintiff is capable of meeting common demands of everyday life. O'Neal, 614 F. App'x at 459. Finally, the ALJ's decision is strongly supported by the consultative examiner's opinion that her perceptual reasoning skills, which were in the borderline range, accurately reflects her true level of cognitive functioning. R. at 349; See Hickel, 539 F. App'x at 985 (citing evidence that the medical sources found the claimant's functioning more consistence with borderline intellectual functioning). In support of this finding, the consultative examiner cited Plaintiff's driver's

license, her ability to do her own shopping, and her ability to follow basic directions. R. at 349.

Plaintiff also contends that the ALJ's adaptive functioning analysis is inconsistent with the Diagnostic and Statistical Manual of Mental Disorders (4th Ed.) ("DSM IV"). (Doc. no. 10, p. 11.) The ALJ is not required to follow the guidelines set forth in the DSM-IV when determining deficits in adaptive functioning. See Cammon v. Astrue, CV 308-0131, 2009 WL 3245458, at *11 (N.D. Ga. 2009) ("Although the language of Listing 12.05 closely tracks the diagnostic criteria for mental retardation found in the Diagnostic and Statistical Manual of Mental Disorders (American Psychiatric Association 4th ed. 1994) ("DSM-IV"), there are differences between the two.") The diagnostic criteria in the mental disorders listings are not confined to the analysis in the DSM-IV. (Id.) Thus, whether a Plaintiff meets the DSM-IV definition of intellectual disability is not dispositive. In the midst of this argument, Plaintiff also cites a questionnaire filled out by Plaintiff's daughter indicating that Plaintiff is unable to use the bathroom, take a bath, get dressed, or feed herself in contending that Plaintiff is deficient in self-care. R. at 218. However, this is entirely inconsistent with Plaintiff's own testimony showing that she is largely self-sufficient. R. at 34-36.

In sum, the ALJ's decision that Plaintiff did not have the deficits in adaptive functioning to qualify under Listing 12.05B or 12.05C is supported by substantial evidence. The ALJ cited Plaintiff's ability to drive, handle money, pay taxes, work history, apparent childcare abilities, and the consultative examiner's conclusion that her functioning was

inconsistent with a diagnosis of intellectual ability. Under current Eleventh Circuit precedent, this is sufficient to rebut the <u>Hodges</u> presumption of deficits in adaptive functioning.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 30th day of November, 2015, at Augusta, Georgia.

*/s/ Brian K. Epps*
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA